IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>                    Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>                    Defendants. | Case No. 24-cv-03262<br><br>**Judge Sara L. Ellis**<br><br>**Magistrate Judge Beth W. Jantz** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

      Plaintiff Microsoft Corporation ("Plaintiff") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery.

**Table of Contents**

I. INTRODUCTION ..........................................................................................................1

II. STATEMENT OF FACTS ...........................................................................................2

    a. Plaintiff's Trademarks and Genuine Products .........................................................2

    b. Defendants' Unlawful Activities .............................................................................4

III. ARGUMENT ................................................................................................................5

    a. Standard for Temporary Restraining Order and Preliminary Injunction ................6

    b. Microsoft Will Likely Succeed on the Merits .........................................................7

    c. There Is No Adequate Remedy At Law, and Microsoft Will Suffer Irreparable Harm in the Absence of Preliminary Relief ...........................................................................................8

    d. The Balancing of Harms Tips in Microsoft's Favor, and the Public Interest is Served by Entry of the Injunction .....................................................................................................10

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE .....................................11

    a. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Minecraft Trademarks is Appropriate .......................................11

    b. Preventing the Fraudulent Transfer of Assets Is Appropriate ..............................11

    c. Microsoft Is Entitled to Expedited Discovery ......................................................13

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ....................................13

VI. CONCLUSION ...........................................................................................................14

**MEMORANDUM OF LAW**

**I.     INTRODUCTION**

Plaintiff is requesting temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, and false designation of origin against the defendants identified on Schedule A to the Complaint (collectively, the "Defendants"). As alleged in Plaintiff's Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling products using infringing and counterfeit versions of Plaintiff's federally registered trademark (collectively, the "Unauthorized Products") through at least the fully interactive e-commerce stores operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases").

Defendants run a sophisticated counterfeiting operation and have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more seller aliases through which Illinois residents can purchase Unauthorized Products. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Further, Defendants attempt to avoid liability by operating under one or more seller aliases to conceal their identities and the full scope and interworking of their operations. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademark, as well as to protect unknowing consumers from purchasing Unauthorized Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests this Court to issue an *ex parte* Temporary Restraining Order.

1

II.      STATEMENT OF FACTS

    a.  <u>Plaintiff's Trademarks and Genuine Products</u>

Plaintiff, Microsoft Corporation, is an American multinational corporation and technology company having its principal place of business in Redmond, Washington and is the owner of the trademarks asserted in this action. *See* Declaration of Paul Varley (the "Varley Declaration") at ¶ 3. Initially known for its operating system, MS-DOS and later Windows, Microsoft has diversified its offerings to include a wide range of software, hardware, and services. *Id*.

In 2001, Microsoft entered the video game industry with the launch of the original Xbox console. *Id.* at ¶ 4. Through years of innovations, improvements, and expansions, Microsoft is now a major player in the video game industry. *Id.* In addition to creating hardware, Microsoft expanded its gaming portfolio to include acquisitions of game development studios. *Id*. In 2014, Microsoft acquired Mojang, the celebrated Stockholm-based game developer, and the company's iconic *Minecraft* video game. *Id.*

*Minecraft* is one of the top PC games of all time, the most popular online game on Xbox, and the top paid app for iOS and Android in the US. *Id.* at ¶ 6. The *Minecraft* community is among the most active and passionate in the industry, with over 166 million monthly active players worldwide. *Id. Minecraft* has also won numerous awards since its release, including: (1) the 2020, 2022, and 2023 Kid's Choice Award for Favorite Videogame; (2) the 2014, and 2016 BAFTA Children's Award; (3) the 2015 BAFTA Award for Best Family Game; and (4) the 2011 VGX Award for Best Independent Game. *Id.*

Microsoft markets and sells a variety of products emanating from *Minecraft*, including apparel such as hoodies, headwear, t-shirts, and shorts; games and playthings, including plush dolls, toy building blocks, role-playing toys, and toy figures; accessories like jewelry, stickers,

phone cases, and bags; and other merchandise bearing Microsoft's trademarks (collectively, "Minecraft Products"). *Id.* at ¶ 7. Minecraft Products have become enormously popular and even iconic, driven by Microsoft's quality standards and innovative designs. *Id.* Among the purchasing public, Minecraft Products are instantly recognizable as such. *Id.* Minecraft Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Walmart and Target, and through Microsoft's official store shop.minecraft.net. *Id.*

Microsoft has used the MINECRAFT trademarks, and other trademarks, for many years and has continuously sold products under its trademarks (collectively "Minecraft Trademarks"). *Id.* at ¶ 8. The Minecraft Trademarks are also registered with the United States Patent and Trademark Office. *Id.* at ¶ 9. The Minecraft Trademarks are valid, subsisting, and in full force and effect. *Id.* The Minecraft Trademarks are exclusive to Microsoft and are displayed extensively on Minecraft Products and in marketing and promotional materials. *Id.* at ¶ 10. The Minecraft Trademarks are also distinctive when applied to Minecraft Products, signifying to the purchaser that the products come from Microsoft and are manufactured to Microsoft's quality standards. *Id*. The Minecraft Trademarks constitute *prima facie* evidence of their validity and of Microsoft's exclusive right to use its trademarks pursuant to 15 U.S.C. § 1057(b). The Minecraft Trademarks are also famous marks as that term is used in 15 U.S.C. § 1125(c)(1). *Id.* at ¶ 11.

Furthermore, Minecraft Products typically include at least one of the Minecraft Trademarks. *Id.* at ¶ 8. Microsoft has also expended substantial time, money, and other resources advertising, promoting, and marketing Minecraft Products. *Id.* at ¶ 13. The success of *Minecraft*, in addition to the marketing of Minecraft Products, has enabled the Minecraft brand to achieve widespread recognition and fame and has made the Minecraft Trademarks some of the most well-

3

known marks in the video game, entertainment, and merchandising industries. *Id.* at ¶ 11. As a result, products bearing the Minecraft Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from Microsoft. *Id.* at ¶ 13.

      b. <u>Defendants' Unlawful Activities</u>

The success of *Minecraft* has resulted in significant counterfeiting of the Minecraft Trademarks. *Id.* at ¶ 15. Because of this, Microsoft has implemented an anti-counterfeiting program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. *Id.* Recently, Microsoft has identified many fully interactive e-commerce stores offering products using infringing and counterfeit versions of Plaintiff's Trademark ("Unauthorized Products") on online marketplace platforms such as Alibaba Group Holding Ltd. ("Alibaba"), AliExpress ("AliExpress"), Dhgate.com ("DHGate"), eBay, Inc. ("eBay"), Etsy, Inc. ("Etsy"), Fruugo.com Limited ("Fruugo"), SIA Joom ("Joom"), Printerval.com ("Printerval"), Spreadshirt, Inc. ("Spreadshirt"), TP Apparel LLC ("Teepublic"), WhaleCo, Inc. ("Temu"), and Context Logic, Inc. d/b/a Wish.com ("Wish"), including the fully interactive e-commerce stores operating under the Seller Aliases. *Id*. The Seller Aliases target consumers in this Judicial District and throughout the United States. *Id.*

Microsoft's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases, similarities between the Unauthorized Products sold by Defendants, and common tactics employed to evade enforcement efforts, establish a logical relationship among the Defendants and demonstrate that Defendants are interrelated.

4

**III. ARGUMENT**

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Microsoft's reputation and the goodwill symbolized by the Minecraft Trademarks. Rule 65(b) of the Federal Rules of Civil Procedure allows the Court to issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from the sale of Unauthorized Products and would preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. *See* Declaration of Martin F. Trainor (the "Trainor Dec.") at ¶¶ 2–4. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers before temporary injunctive relief … can be granted"). Accordingly, Microsoft respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target their business activities at consumers in the United States, including Illinois, through

at least the fully interactive e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, have sold Unauthorized Products to residents of Illinois. *See* Complaint at §§ 2, 22, 30-31. *See NBA Properties, Incorporated v. HANWJH,* 46 F.4th 614, 624 (7th Cir. Aug. 16, 2022) ("[I]n assessing purposeful direction, what matters is [the defendant's] structuring of its own activities so as to target the Illinois market"). As such, each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Microsoft substantial injury in Illinois.

      a.  <u>Standard for Temporary Restraining Order and Preliminary Injunction</u>

The standard for granting a TRO and a preliminary injunction is identical in this Circuit. *See USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 (N.D. Ill. 2019) (collecting cases). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. V. Mead Johnson &*

*Co.*, 971 F.2d 6, 12 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need to favor the movant's position. *Id.*

      b. <u>Microsoft Will Likely Succeed on the Merits</u>

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, a plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id.*

The Minecraft Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office. The Minecraft Trademarks have been continuously used and never abandoned. Varley Dec. at ¶ 11. The registrations for the Minecraft Trademarks constitute *prima facie* evidence of their validity and of Microsoft's exclusive right to use the Minecraft Trademarks pursuant to § 1057(b). Furthermore, Microsoft has not licensed or authorized Defendants to use the Minecraft Trademarks, and none of the Defendants are authorized retailers of Minecraft Products. *Id.* at ¶ 18.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007) (citing *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148). Accordingly, the

Court can presume a likelihood of confusion from Defendants' use of the Minecraft Trademarks. The result is the same when considered in light of the Seventh Circuit's seven factor test to determine whether there is a likelihood of confusion, including: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products/services; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but "the similarity of the marks, the defendant's intent, and actual confusion are particularly important." *Id.*

Microsoft has submitted extensive evidence showing the Defendants are offering for sale and/or selling Unauthorized Products that look like Minecraft Products and use infringing and/or counterfeit marks identical to the Minecraft Trademarks. *See* Varley Declaration at ¶ 16. Defendants sell products using the Minecraft Trademarks to the same consumers that Microsoft targets. *Id.* at ¶ 17. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing Minecraft Products from Unauthorized Products. Defendants are intentionally trying to induce consumers to purchase Unauthorized Products by advertising Unauthorized Products using the Minecraft Trademarks. *See id*. at ¶ 18-19. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as Minecraft Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Microsoft is likely to establish a prima facie case of trademark infringement and counterfeiting, and false designation of origin.

   c. <u>There Is No Adequate Remedy At Law, and Microsoft Will Suffer Irreparable Harm in the Absence of Preliminary Relief</u>

Because Microsoft has shown a likelihood of success on the merits, Microsoft is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Moreover, the Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)). Where the probability of consumer confusion is high, "injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows". *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citing *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2nd Cir. 1971)). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods." *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979) (citing 4 Calmann *Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3rd ed. 1970). As such, monetary damages are likely to be inadequate compensation. *Id.*

Defendants' unauthorized use of the Minecraft Trademarks has and continues to irreparably harm Microsoft through diminished goodwill and brand confidence, damage to Microsoft's reputation, loss of exclusivity, and loss of future sales. Varley Dec. at ¶¶ 26–30. The extent of the harm to Microsoft's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) ("Because of the difficulty in assessing the damages associated with a loss of goodwill … [Plaintiff] lacked an adequate remedy at law").

Microsoft will suffer immediate and irreparable injury, loss, or damage if an *ex parte* TRO is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Varley Dec. at ¶ 31.

> d. The Balancing of Harms Tips in Microsoft's Favor, and the Public Interest is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Microsoft has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Microsoft will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.*, 929 F. Supp. 473, 478 (D.D.C. 1996).

As Microsoft has demonstrated, Defendants have been profiting from the sale of Unauthorized Products. Thus, the balance of equities tips decisively in Microsoft's favor. The public is currently under the false impression that Defendants are operating their e-commerce store with Microsoft's approval and endorsement. The injury to the public is significant and the injunctive relief Microsoft seeks is intended to remedy that injury by dispelling the public

confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …" 15 U.S.C. § 1116(a).

### a. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Minecraft Trademarks is Appropriate

Microsoft requests a temporary injunction requiring Defendants to immediately cease all use of the Minecraft Trademarks or substantially similar marks on or in connection with the e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to the Minecraft brand and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Minecraft Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Microsoft is currently unaware of the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute, sell, and offer to sell Unauthorized Products. Many courts have authorized immediate injunctive relief in similar cases involving trademark counterfeiting and infringement. *See, e.g.*, *XYZ Corporation v. The P'ships*, No. 22-cv-01002 (N.D. Ill. Mar. 7, 2022) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

### b. Preventing the Fraudulent Transfer of Assets Is Appropriate

Microsoft requests an *ex parte* restraint of Defendants' assets so Microsoft's right to an equitable accounting of Defendants' profits from Unauthorized Product sales is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted

11

in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Microsoft meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). Additionally, Microsoft has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Microsoft is entitled, "subject to the principles of equity, to recover … defendant's profits." Microsoft's Complaint seeks, among other relief, that Defendants account for and pay to Microsoft all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Microsoft's request for a prejudgment asset freeze to preserve relief sought by Microsoft.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized it was explicitly allowed to issue asset restraints for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the plaintiff sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Microsoft has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that barring Defendants' assets being

frozen, Defendants will likely hide or move their ill-gotten funds to offshore accounts. Accordingly, an asset restraint is proper.

      c. <u>Microsoft Is Entitled to Expedited Discovery</u>

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2)).

Microsoft respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit operations. The expedited discovery requested in Microsoft's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., XYZ Corporation v. The P'ships*, No. 22-cv-01002 (N.D. Ill. Mar. 7, 2022) (unpublished). Microsoft's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Microsoft respectfully requests that expedited discovery be granted.

**V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF**

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Microsoft's evidence of trademark infringement and counterfeiting, and false designation of origin claims, Microsoft respectfully requests that this Court require Microsoft to post a bond of no more than ten thousand U.S. dollars ($10,000.00).

*See, e.g., Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015) ($10,000 bond).

## VI. CONCLUSION

Defendants' unlawful operations are irreparably harming Microsoft's business, the Minecraft brand, and United States consumers. In view of the foregoing and consistent with previous similar cases, Microsoft respectfully requests that this Court enter a TRO in the form submitted herewith.

Dated this 29th day of April 2024.  Respectfully submitted,

/s/ Martin F. Trainor
Martin F. Trainor
Sydney Fenton
Richard Poskozim
Alexander Whang
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com
sydney@tme-law.com
richard@tme-law.com
alexander@tme-law.com

*Counsel for Plaintiff Microsoft Corporation*